UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EVA RUIZ,

               Plaintiff,

   - against -

JO ANNE BARNHART,
Commissioner of Social Security,

               Defendant.

03 Civ. 10128 (JGK)

**OPINION AND ORDER**

**JOHN G. KOELTL**, District Judge:

The plaintiff, Eva Ruiz, brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking reversal of a final determination of the Commissioner of Social Security ("Commissioner") that the plaintiff was not entitled to disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). In response, the Commissioner moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) to affirm the Commissioner's decision that the plaintiff is not entitled to DIB and SSI under the Social Security Act ("the Act").

The sole issue on this motion is whether substantial evidence supports the Commissioner's finding that the plaintiff is not entitled to DIB and SSI under the Act because she is not disabled.

The plaintiff filed applications for DIB and SSI benefits on September 14, 2001. (R. at 163-66, 260-63.) The applications were denied. (R. at 149-54, 264-69.) The

1

plaintiff filed a timely hearing request and received a hearing before the Administrative Law Judge ("ALJ"), Gerald J. Ryan, on March 18, 2003. (R. at 21-41.) The ALJ considered the case de novo and issued a decision on July 28, 2003, denying the plaintiff's claim. (R. at 10-17.) The decision became the Commissioner's final decision on September 26, 2003, when the Appeals Council denied the plaintiff's request for review of the ALJ's decision. (R. at 6-8.) This appeal followed.

## I.

The administrative record contains the following facts. The plaintiff was born on April 17, 1964. (R. at 24.) She had attended college for three years, and is able to read and write in English. (R. at 24-25.) The plaintiff testified that she worked for an appliance company through August 2001. (R. at 26.) In the previous fifteen years, the plaintiff worked as a sales clerk, secretary at a school, clerk in a Social Security office, and receptionist in a medical office. (R. at 187.) The plaintiff indicated that all of these jobs required lifting less than ten pounds. (R. at 188-93.) The plaintiff further indicated that the sales clerk and receptionist jobs involved sitting for at least six hours a day and entering data into a computer. (R. at 188, 190, 192.)

The plaintiff stated that she has been unable to work since August 2001 due to asthma and back pain. (R. at 28, 178.) She also testified that her last employer discharged her because her breathing affected the other employees. (R. at 27.) The plaintiff testified that she took a variety of medications that were largely successful in controlling her asthma, though she sometimes failed to take her medication as prescribed, which resulted in occasional exacerbations of her condition. (R. at 36-38.) She also stated that she took Propoxy and Motrin for muscle spasms, back pain, and migraines. (R. at 29-30.)

The plaintiff testified that she was able to do light cleaning, cooking, and laundry, but that she often needed the help of her son when such work involved irritants that could potentially aggravate her condition. (R. at 31.) The plaintiff claimed that she could not stand for more than three and a half hours, and could not sit for longer than two hours at a time. (R. at 34.) In addition, the plaintiff testified that her doctor recommended that she not walk too much, and that she avoid climbing and stooping. (R. at 39.)

## II.

The plaintiff's relevant medical history includes a variety of medical opinions given both before and after her period of eligibility. These opinions, including those of

3

the State's reviewing doctors, will be noted in chronological order.

The New York Medical Group, P.C. treated the plaintiff during the period August 1994 through December 1999. (R. at 72-122.) On August 24, 1994, the plaintiff gave a six-year history of bronchial asthma. (R. at 118.) She reported using an inhaler, and also indicated that she smoked. (Id.) She reported that she had never been hospitalized. (Id.) The physician recommended that the plaintiff discontinue smoking. (Id.)

The plaintiff was evaluated for asthma again on December 9, 1996. (Id.) After using a nebulizer, her lungs were clear and medication was prescribed. (R. at 118.)

The plaintiff was treated for an exacerbation of asthma on March 17, 1997. (R. at 117.) An examination two days later revealed bilateral wheezing, though an x-ray of the plaintiff's chest was normal. (R. at 116-17.) The plaintiff was enrolled in an asthma training program on March 20, 1997, and was taught to avoid substances that triggered asthma attacks. (R. at 117.)

On April 7, 1997, a physical examination revealed that the plaintiff's head, ears, nose, and throat were normal. (R. at 110.) Similarly, her chest and lungs were clear, and musculoskeletal and neurological examinations were within

normal limits. (Id.) The examining physician diagnosed bronchial asthma. (Id.) Subsequent examinations over the next year resulted in substantially similar findings. (See R. at 88-90, 104, 107.)

On December 20, 1999, Dr. Michael Polak performed a consultative examination. (R. at 123-32.) He noted that the plaintiff ambulated without difficulty, that her gait was within normal limits, and that she had no difficulty arising from her chair or getting on and off the examining table. (R. at 124.) Dr. Polak noted that there was no obvious deformity of the spine or remaining joints, and that all joints exhibited a full range of motion. (Id.) He noted that the plaintiff's lungs exhibited diffuse inspiratory and expiratory wheezing. (Id.) The plaintiff's breath sounds were equal on both sides and there was good diaphragmatic excursion. (Id.) Chest x-rays were negative and pulmonary function tests appeared normal. (R. at 125-32.)

Dr. Polak diagnosed asthma and estimated that the plaintiff was "mildly impaired for carrying/lifting, pushing/pulling, walking or standing." (R. at 124-25.) He further opined that the plaintiff should have no difficulty doing activities requiring dexterity, bending, or sitting. (R. at 125.) He recommended that the plaintiff avoid

5

exposure to dusts, chemicals, smoke and noxious inhalants and extremes of cold and heat. (Id.)

On January 4, 2000, Dr. H. Porter, a state agency medical consultant, reviewed the medical evidence and assessed the plaintiff's residual functional capacity. (R. at 133-40.) Dr. Porter found that the plaintiff had no limitations with respect to lifting, carrying, standing, walking, sitting, pushing or pulling. (R. at 134.) Dr. Porter recommended that the plaintiff avoid all exposure to extreme cold, extreme heat, fumes, odors, dusts, gases, and poor ventilation. (R. at 137.)

Dr. Rajani K. Kantha treated the plaintiff in August and October of 2000 and July of 2001 (R. at 252, 257.) At the August 30, 2000 examination, the plaintiff exhibited wheezing. (R. at 257.) During the October 10, 2000 examination, the plaintiff had a cough and was wheezing without a fever and was treated with Epinephrine. (Id.) On July 9, 2001, the plaintiff's lungs exhibited expiratory wheezes. (R. at 252.) Following treatment with Albuterol, the plaintiff's lungs were totally clear. (Id.)

Dr. Peter Graham performed a consultative examination on August 31, 2001. (R. at 217-23.) He reported that the plaintiff's lungs exhibited mild wheezing with some prolongation of expiration, but no rales or rhonchi. (R. at

6

217.)  Her extremities showed no clubbing, cyanosis,

ulceration or edema, and chest x-rays were negative.  (R. at

218.)  Pulmonary function tests were also normal.  (Id.)

Further examination by Dr. Graham indicated that the

plaintiff was able to ambulate without assistance, with

normal station and gait.  (Id.)  All of the plaintiff's

joints showed a full range of motion without deformity,

swelling or tenderness.  (Id.)  The plaintiff's spine showed

a normal range of motion, with no spasm, deformity or

tenderness.  (Id.)  Dr. Graham diagnosed asthma by history,

with no clinical bronchospasm present.  (Id.)  Dr. Graham

opined that plaintiff was able to sit, stand, walk, lift,

carry, handle objects, hear, speak, and travel.  (Id.)  He

recommended that the plaintiff avoid exposure to dust,

chemicals, fumes, environmental allergens, and extreme

weather changes.  The prognosis was stable.  (Id.)

In addition to the dates referred to above, Dr. Kantha

also treated the plaintiff in September and October of 2001,

and provided two medical reports in June 2002.  (R. at 243-

45.)  In the September 6, 2001 examination, the plaintiff

exhibited bilateral expiratory wheezing.  (R. at 255.)  She

received a nebulizer treatment, and subsequent examination

revealed clear lungs.  (R. at 255.)

The plaintiff returned the following day complaining of wheezing. (R. at 254.) It was noted at that time that she had no Albuterol pump. (Id.) She received an Epinephrine injection, which cleared her lungs within five minutes. (Id.) On October 9, 2001, Dr. Kantha treated the plaintiff with Epinephrine and Benadryl for asthma and an allergic reaction. (Id.) Subsequent examination revealed clear lungs. (Id.) Dr. Kantha saw the plaintiff again on October 19, 2001, for asthma. After receiving an injection of Epinephrine, her lungs were clear. (R. at 253.)

Dr. Kantha stated in a June 4, 2002 report that he had treated the plaintiff for bronchial asthma since August 30, 2000. (R. at 250.) Dr. Kantha reported the plaintiff's symptom as wheezing, coughing, and tightness of the chest. (R. at 250.) He also stated that the plaintiff received Epinephrine injections during asthma exacerbations and that she took medication and was to use an inhaler on a daily basis. (R. at 251.) As a result of her asthma, Dr. Kantha recommended that the plaintiff should avoid temperature extremes, fumes, chemicals, dust, and humidity. (R. at 248.)

Dr. Kantha prepared another medical report on June 25, 2002. (R. at 243-45.) He stated that he had last examined the plaintiff on that day, and that he treated her for recurrent exacerbations of asthma. (R. at 243.) Dr. Kantha

# III.

A court may set aside a determination by the
Commissioner only if it is based on legal error or is not
supported by substantial evidence in the record.  See 42
U.S.C. §§ 405(g), 1383(c); Berry v. Schweiker, 675 F.2d 464,
467 (2d Cir. 1982).  Substantial evidence is "more than a
mere scintilla"; it is "such relevant evidence as a
reasonable mind might accept as adequate to support a
conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971)
(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197
(1938)); see also Diaz v. Shalala, 59 F.3d 307, 312 (2d Cir.
1995); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).

The analytical framework for evaluating claims of
disability for DIB and SSI is defined by regulations of the
Commissioner, which set forth a five-step inquiry.  See 20
C.F.R. §§ 404.1520, 416.920.  The Court of Appeals for the
Second Circuit has described this five-step process as
follows:

1. The Commissioner considers whether the claimant
   is currently engaged in substantial gainful
   activity.

2. If not, the Commissioner considers whether the
   claimant has a "severe impairment" which limits
   his or her mental or physical capacity to do
   basic work activities.

3. If the claimant has a "severe impairment," the
   Commissioner must ask whether, based solely on
   medical evidence, claimant has an impairment

listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps.

Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000) (internal citation omitted); see also Melville v. Apfel, 198 F.3d 45, 51 (2d Cir. 1999); Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir. 1995); Villanueva v. Barnhart, No. 03 Civ. 9021, 2005 WL 22846, at *6-7 (S.D.N.Y. Jan. 3, 2005).

The claimant bears the initial burden of proving that she is disabled within the meaning of the Act. See 42 U.S.C. §§ 423(d)(5), 1382c(a)(3)(H)(i); see also Shaw, 221 F.3d at 132; Rodriguez v. Apfel, No. 96 Civ. 8330, 1998 WL 150981, at *7 (S.D.N.Y. Mar. 31, 1998). This burden encompasses the first four steps described above. See Rivera v. Schweiker, 717 F.2d 719, 722 (2d Cir. 1983). If the claimant satisfies the burden of proof through the fourth step, she has established a prima facie case and the burden shifts to the

11

Commissioner to prove the fifth step.  See id. at 722-23; see also Infante v. Apfel, No. 97 Civ. 7689, 2001 WL 536930, at *4 (S.D.N.Y. May 21, 2001) (citing Berry, 675 F.2d at 467).

When employing this five-step process, the ALJ "must consider" four factors in determining a claimant's entitlement to benefits: "(1) the objective medical facts; (2) diagnoses of medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience."  Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (citation omitted); see also Blaylock-Taylor v. Barnhart, No. 03 Civ. 3437, 2005 WL 1337928, at *6-8 (S.D.N.Y. Jun. 6, 2005).

In the assessment of medical evidence, a treating physician's opinion is given controlling weight when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record ...."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Schisler v. Sullivan, 3 F.3d 563, 567 (2d Cir. 1993).  The Commissioner's regulations require that greater weight generally be given to the opinion of a treating rather than a non-treating physician.

12

## IV.

In this case, judgment on the pleadings should be granted in favor of the Commissioner. The ALJ carefully evaluated the plaintiff's claims of physical impairments and there is substantial evidence to support his determination that the plaintiff was not disabled under the Act.

The ALJ undertook the appropriate sequential inquiry in the plaintiff's case. At step one, the ALJ correctly found that the plaintiff had not engaged in substantial gainful activity since August 2001, the date of her alleged onset of disability. (R. at 16.)

At step two, the ALJ determined that the plaintiff had impairments that qualified as "severe" based on the requirements in the regulations. (Id.) The evidence established that the plaintiff had asthma and back pain. (R. at 14.)

At step three, the ALJ correctly determined that the plaintiff's impairments, although severe, did not meet or medically equal one of the listed impairments contained in 20 C.F.R. Part 404, Appendix 1, Subpart P, Regulation No. 4. (R. at 16.)

At step four, the ALJ compared the plaintiff's residual functional capacity to her past relevant work as a sales clerk, receptionist, and secretary. (R. at 16-17.) The ALJ

determined that the plaintiff could perform "light exertional work that does not expose the claimant to excessive pulmonary irritants." (R. at 16.) Regulations promulgated by the Social Security Administration correlate the findings of "light work" to specific levels of functional capacity. See 20 C.F.R. §§ 404.1567, 416.967 (defining "light work" as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.").

The ALJ reached his conclusion after properly considering the opinions of the physicians that treated the plaintiff. The plaintiff saw a variety of doctors, in some cases for a single visit, others multiple times. The record indicates that the plaintiff was treated for asthma exacerbations on several occasions in September and October of 2001. (R. at 253-55.) However, on each occasion the plaintiff responded well and quickly to medication. (Id.) This was consistent with the plaintiff's medical history.

Based on a June 25, 2002 examination, Dr. Kantha completed a report indicating that the plaintiff's asthma-related impairments limited her to carrying no more than five to ten pounds. (R. at 244.) He did not indicate that the plaintiff had any restriction with respect to standing, walking or sitting. (Id.) To the extent that Dr. Kantha's opinion indicated that the plaintiff was limited to lifting

14

plaintiff has demonstrated an inability to perform her past relevant work. The ALJ, however, determined that the plaintiff retained sufficient residual functional capacity to perform her prior work as a sales clerk, secretary, office clerk, or receptionist. (R. at 16.) Therefore, it was unnecessary for the ALJ to decide whether there was other work available that the plaintiff could perform.

## CONCLUSION

There is substantial evidence in the record as a whole to support the Commissioner's determination that the plaintiff is not disabled under the Act, and is not entitled to disability insurance benefits and Supplemental Security Income. Therefore, the defendant's motion for judgment on the pleadings is **granted**. The Clerk is directed to enter judgment and to close this case.

SO ORDERED.

Dated: New York, New York
       May 10, 2006

John G. Koeltl
United States District Judge

18